**Becky DOTY, Vicky Doty, David Price and Roy Price, Plaintiffs-Appellants Cross-Appellees,**

v.

**Eddy ELIAS d/b/a Eddy's Steakhouse, Defendant-Appellee Cross-Appellant.**

**Nos. 82–1944, 82–1961.**

United States Court of Appeals, Tenth Circuit.

May 3, 1984.

H. Tom Hendren, Sand Springs, Okl., for plaintiffs-appellants and cross-appellees.

Robert H. Garner, Tulsa, Okl. (Don E. Gasaway, Tulsa, Okl., on the brief), of Gas-away, Green & Harris, Tulsa, Okl., for defendant-appellee and cross-appellant.

Before BARRETT, McKAY and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

Becky Doty, Vicky Doty, David Price, and Roy Price brought this action against Eddy Elias under the Fair Labor Standards Act, 29 U.S.C. §§ 201–19, alleging that Elias violated the Act's minimum wage and overtime compensation provisions. Plaintiffs formerly worked as waitresses or waiters at Eddy's Steakhouse, a restaurant Elias owns and operates. None of the plaintiffs received an hourly wage or salary while working at the restaurant. Instead, Elias permitted plaintiffs to keep all of the tips they received. After a bench trial, the district court found that plaintiffs were Elias' employees within the meaning of the Act and that Elias had violated the Act's minimum wage provision, 29 U.S.C. § 206. The court awarded plaintiffs unpaid wages and prejudgment interest but refused to award liquidated damages. Both parties appealed. The issues we address are: (1) whether plaintiffs were Elias' employees for the purposes of the Act; (2) whether Elias' method of compensating plaintiffs violated the Act's minimum wage requirements; (3) whether the trial court erred in admitting certain testimony by plaintiffs; (4) whether the trial court erred in computing the number of hours plaintiffs worked; and (5) whether the trial court erred in not awarding liquidated damages.

I

■ Elias contends that plaintiffs were not covered by the Act because they were not "employees" but independent contractors. In determining whether an individual is an "employee" within the meaning of the FLSA, we must look to the economic realities of the relationship. *Castillo v. Givens*, 704 F.2d 181, 188 (5th Cir.), *cert. denied*, —— U.S. ——, 104 S.Ct. 160, 78 L.Ed.2d 147 (1983). The focal point in deciding whether an individual is an employee

is whether the individual is economically dependent on the business to which he renders service, *see Bartels v. Birmingham,* 332 U.S. 126, 130, 67 S.Ct. 1547, 1549, 91 L.Ed. 1947 (1947), or is, as a matter of economic fact, in business for himself. *Donovan v. Tehco, Inc.,* 642 F.2d 141, 143 (5th Cir.1981). In applying this test, the courts generally focus on five factors: (1) the degree of control exerted by the alleged employer over the worker; (2) the worker's opportunity for profit or loss; (3) the worker's investment in the business; (4) the permanence of the working relationship; and (5) the degree of skill required to perform the work. *Trustees of Sabine Area Carpenters' Health & Welfare Fund v. Don Lightfoot Home Builder, Inc.,* 704 F.2d 822, 825 (5th Cir.1983).

In arguing that plaintiffs were independent contractors rather than employees, Elias emphasizes the lack of control he exercised over plaintiffs' work. In particular he stresses that plaintiffs did not have rigid work schedules and thus were free, within limits, to determine their hours of work. A relatively flexible work schedule alone, however, does not make an individual an independent contractor rather than an employee. *See Castillo v. Givens,* 704 F.2d at 189–90; *Usery v. Pilgrim Equipment Co.,* 527 F.2d 1308, 1312–13 (5th Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 82, 50 L.Ed.2d 89 (1976). Since plaintiffs could wait tables only during the restaurant's business hours, Elias essentially established plaintiffs' work schedules. More important, plaintiffs neither invested in an enterprise, nor shared in its profits or losses. Elias retained the power to fire plaintiffs at will. Plaintiffs' jobs did not require any specialized skills. Thus, the record clearly demonstrates that plaintiffs were economically dependent on Elias' business. Elias cites no cases finding that restaurant waiters are independent contractors. The trial court correctly concluded that plaintiffs were employees of defendant for the purposes of the FLSA.

## II

We next consider whether Elias violated the Act's minimum wage requirements, 29 U.S.C. § 206. Under 29 U.S.C. § 203(t), a "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." Section 203(m) provides in relevant part:

"In determining the wage of a tipped employee, the amount paid such employee by his employer shall be deemed to be increased on account of tips by an amount determined by the employer, but not by an amount in excess of 40 per centum of the applicable minimum wage rate, except that the amount of the increase on account of tips determined by the employer may not exceed the value of tips actually received by the employee. The previous sentence shall not apply with respect to any tipped employee unless (1) such employee has been informed by the employer of the provisions of this subsection, and (2) all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

29 U.S.C. § 203(m). The district court found that plaintiffs received more money from tips than they would have received if Elias had merely paid them the minimum hourly wage. It also found that plaintiffs were tipped employees within the meaning of § 203(t) and that Elias never informed plaintiffs of the provisions of § 203(m). Accordingly, the trial court concluded that all plaintiffs were entitled to unpaid wages consisting of the full minimum hourly wage for each hour they worked.

In arguing that the trial court erred in awarding unpaid wages, Elias does not contest the trial court's findings that plaintiffs were tipped employees and that he had never informed them of the provisions of § 203(m). Rather, he contends that the district court erred in concluding that § 203(m) is the exclusive method of computing tipped employees' wages under the

FLSA. Elias relies on *Hodgson v. Bern's Steak House, Inc.*, 20 Wage & Hour Cas. (BNA) 261 (M.D.Fla.1971). In that case, the employer and its waiters had entered into an agreement whereby the waiters agreed to accept tips as wages under the Act, and the employer agreed to make up the difference if any waiter did not receive the statutory minimum wage in tips. Concluding that "[n]either Section 3(m) nor Section 3(t) impose the sole or exclusive method by which employers who employ persons who receive tips in the course of their employment must be compensated," the court found that the agreement met the Act's minimum wage requirements. 20 Wage & Hour Cas. (BNA) at 268. Without contending that he entered into such an agreement with plaintiffs, Elias argues that *Bern's Steak House* stands for the proposition that an employer who allows employees to keep their tips complies with the Act so long as the employees make at least as much in tips as they would if they received only the minimum hourly wage. Thus, Elias argues that he complied with the Act's minimum wage requirements.

■ We disagree. That interpretation of the Act's requirements does violence to the language of § 203(m) and would render much of that section superfluous. Moreover, Elias' construction contravenes Congress' purpose in enacting § 203(m): to ensure that an employer may not use the tips of a tipped employee to satisfy more than a specified percentage of the Act's minimum hourly wage. *See* S.Rep. No. 1487, 89th Cong., 2d Sess., *reprinted in* 1966 U.S.Code Cong. & Ad.News 3002, 3014–15. We need not address here whether an agreement such as that in *Bern's Steak House* is valid under § 203(m); we hold that, at least absent such an agreement, § 203(m) prescribes the method of computing a tipped employee's wages under the FLSA. *See Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 466–68 (5th Cir.1979); *Richard v. Marriott Corp.*, 549 F.2d 303, 305 (4th Cir.), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1100 (1977).

## III

Elias argues that the trial court committed reversible error by permitting Becky Doty and Vicky Doty to refer to notes during their testimony. Several months after the Dotys stopped working at the restaurant, a representative of the United States Department of Labor asked the Dotys to compile a schedule of the times they had worked for Elias. Using a calendar and relying largely upon memory, they did so. Plaintiffs did not offer the schedules into evidence or read them into the record. However, the trial court permitted the Dotys to refer to the schedules occasionally during their testimony. Elias argues that the Dotys' testimony from the schedules was inadmissible because it constituted hearsay under Fed.R.Evid. 801(c) and did not fall within the hearsay exception for past recollection recorded, Fed.R.Evid. 803(5). Plaintiffs, on the other hand, contend that the trial court properly permitted the Dotys to refer to the schedules to refresh their memories as Fed.R.Evid. 612 permits.

■ After carefully reviewing the record, we conclude that the trial court permitted the Dotys to use their notes during their testimony merely to refresh their memories. Thus, the testimony was not hearsay, and we need not consider whether the hearsay exception for past recollection recorded applies. In *United States v. Riccardi*, 174 F.2d 883, 886 (3d Cir.), *cert. denied*, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949), the court articulated the essential distinction between present recollection revived and past recollection recorded:

"The primary difference between the two classifications is the ability of the witness to testify from present knowledge: where the witness' memory is revived, and he presently recollects the facts and swears to them, he is obviously in a different position from the witness who cannot directly state the facts from present memory and who must ask the court to accept a writing for the truth of

its contents because he is willing to swear, for one reason or another, that its contents are true."

(Footnote omitted); *see also O'Quinn v. United States*, 411 F.2d 78 (10th Cir.1969). The trial judge enjoys broad discretion in determining whether a witness is using a writing to refresh memory or offering a writing for the truth of something the witness can no longer recall. *United States v. Riccardi*, 174 F.2d at 889. Both at the time they compiled the schedules and at the time of trial the Dotys apparently recalled the number of weeks they worked for defendant and approximately how many hours per week they worked. The schedules merely helped them recall quickly, without repetition of the mental process of organizing their memories, the approximate dates of specific occurrences. The trial court understood that the schedules were approximations from memory and it treated them as such. Thus, we hold that the trial court did not abuse its discretion in permitting the Dotys to refer to the writings.

### IV

Elias argues that plaintiffs' evidence as to the number of hours they worked for him was insufficiently precise to support the court's award of unpaid wages. However, when, as here, the employer has not complied with his duty under 29 U.S.C. § 211(c) to keep records of his employees' hours,

"an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee,

even though the result be only approximate."

*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88, 66 S.Ct. 1187, 1192, 90 L.Ed. 1515 (1946); *see also Mitchell v. Caldwell*, 249 F.2d 10 (10th Cir.1957). Each plaintiff in the instant case testified regarding the approximate number of hours he or she worked for Elias. Elias offered testimony that at least some of plaintiffs' figures were exaggerations. It is the job of the trial court to assess the credibility of witnesses and resolve conflicting testimony. Its conclusions as to the number of hours that plaintiffs worked, although admittedly approximations, are supported by the evidence and thus are not clearly erroneous.

### V

In their cross-appeals plaintiffs contend that the district court erred in not awarding plaintiffs liquidated damages. An employer that violates the FLSA is ordinarily liable for both unpaid wages and an additional equal amount as liquidated damages. 29 U.S.C. § 216(b). However, 29 U.S.C. § 260 provides:

"In any action commenced prior to or on or after May 14, 1947 to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended, the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in section 216 of this title."

All circuits that have considered the matter hold that the trial court may eliminate or reduce the award of liquidated damages only if the employer shows both that he acted in good faith and that he had reasonable grounds for believing that his actions

did not violate the Act. *See Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir.1982); *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d 464, 468–69 (5th Cir.1979); *Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429, 464 (D.C.Cir.1976), *cert. denied*, 434 U.S. 1086, 98 S.Ct. 1281, 55 L.Ed.2d 792 (1977). The district court in the instant case awarded no liquidated damages because it found that Elias had acted in good faith. The court made no findings as to whether Elias had reasonable grounds for believing that his actions complied with the Act. Neither party contends that an employer's good faith alone suffices to invoke the trial court's discretion under § 260. Rather, the parties disagree as to whether the record reveals that Elias had reasonable grounds for believing that his actions did not violate the Act.

■■■■■ An employer's ignorance of the requirements of the Act does not constitute reasonable grounds for believing that his actions complied with the Act. *Marshall v. Brunner*, 668 F.2d at 753; *Barcellona v. Tiffany English Pub, Inc.*, 597 F.2d at 464. Elias admitted that he never sought an opinion from an attorney or the relevant government agency regarding the legality of his method of compensating his employees. Elias testified that he periodically received government literature regarding the wage and hour laws but did not read it. Indeed, the only evidence that he ever investigated the Act's requirements was his testimony that his accountant told him eight or ten years before trial that his method of compensating waiters and waitresses was legal. This is not enough to meet Elias' burden of showing that he had reasonable grounds for believing that his actions complied with the Act. We must therefore reverse and remand the case with instructions that the district court award plaintiffs liquidated damages.

■■■■■ Finally, we note that the district court awarded plaintiffs prejudgment interest. Before the enactment of 29 U.S.C. § 260, the Supreme Court in *Brooklyn Bank v. O'Neil*, 324 U.S. 697, 65 S.Ct. 895, 89 L.Ed. 1296 (1945), held that a party

may not recover both liquidated damages and prejudgment interest under the FLSA. The Court reasoned that liquidated damages fully compensate plaintiffs for any injuries arising from delay in receiving payment. *Id.* at 715. We think that decision remains binding at least when the court has no discretion to reduce or eliminate the liquidated damages award. *See Masters v. Maryland Management Co.*, 493 F.2d 1329, 1334 (4th Cir.1974); *Hodgson v. Miller Brewing Co.*, 457 F.2d 221, 229 (7th Cir.1972). Accordingly, in light of our conclusion that plaintiffs are entitled to the full award of liquidated damages, we hold that the trial court incorrectly awarded plaintiffs prejudgment interest.

REVERSED and REMANDED.